NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-970

COMMONWEALTH

vs.

FRANCIS R. PENA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a two-day trial in August 2023, a Boston Municipal Court jury convicted the defendant of one count of assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (a). The defendant appeals from his conviction, arguing that (1) the prosecutor made a series of improper remarks in his closing argument, and (2) the judge erred in not providing a specific unanimity instruction. Because we agree that the prosecutor's closing argument created a substantial risk of a miscarriage of justice, we vacate the judgment and set aside the verdict.

Background. We summarize the trial testimony and other evidence, reserving certain details for later discussion. On

August 31, 2022, a criminal complaint issued charging the defendant with one count of threatening to commit a crime, in violation of G. L. c. 275, § 2; two counts of assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (a); and one count of assault by means of a dangerous weapon, in violation of G. L. c. 265, § 15B (b).

At trial, the Commonwealth called two witnesses:  the victim and a Boston Police detective.  The victim testified that she and the defendant had been in a relationship and lived together.  On the morning of August 27, 2022, the defendant and the victim "had a fight" after the defendant saw photographs of another man on the victim's cell phone.  The defendant "pushed [the victim], and [she] pushed him back."  The victim then testified that the defendant "went on top of me" and "started punching me in my face and my head" with a fist; she also hit him back in the face.  The victim further testified that the defendant held a small kitchen knife to her neck and "snatched" her cell phone out of her hands before leaving the apartment. Later that day, the victim received medical treatment and spoke with a Boston Police detective at the hospital.

The detective testified that he reported to the hospital at approximately 6 P.M. to photograph the victim.  Four of the photographs were entered in evidence at trial.

2

At the close of the Commonwealth's case, the judge allowed the defendant's motion for a required finding of not guilty on the count of threatening to commit a crime. The defendant testified as the only defense witness. The jury convicted the defendant of one of the two counts of assault and battery on a family or household member (the jury acquitted the defendant of one count) and acquitted the defendant of assault by means of a dangerous weapon.

Discussion. 1. Closing argument. The defendant argues that the prosecutor made a series of improper statements in his closing argument. Specifically, the defendant contends that the prosecutor (1) impermissibly vouched for the victim's credibility, (2) misstated evidence, (3) argued facts not in evidence, (4) opined on the ultimate issue of the defendant's guilt, (5) misstated the law and shifted the burden of proof to the defendant, and (6) appealed to the jurors' sympathies.

In assessing improprieties in a prosecutor's closing argument, we consider "(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave to the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusion" (citation omitted). Commonwealth v. Lally, 473 Mass. 693, 708 (2016).

3

Because the defendant did not object to the prosecutor's closing at trial, we address each alleged error in turn before examining whether any errors, collectively, created a substantial risk of a miscarriage of justice. See Commonwealth v. Fahey, 99 Mass. App. Ct. 304, 309 (2021).

First, the defendant challenges the prosecutor's following statement made during closing argument as improper vouching: "[D]efense counsel wants you to believe that [the victim] (indiscernible) to get her revenge by bringing charges. That doesn't happen." Improper vouching occurs when an attorney expresses a personal opinion regarding the credibility of a witness or suggests that the attorney has knowledge independent of the evidence before the jury. See Commonwealth v. Muller, 477 Mass. 415, 433 (2017). "It is well settled that '[a] prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs.'" Commonwealth v. Leach, 73 Mass. App. Ct. 758, 767 n.10 (2009), quoting Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999). Here, the prosecutor improperly implied that he had knowledge of how charges are brought and impermissibly suggested that false accusations motivated by revenge or anger would not be brought. See Commonwealth v. Beaudry, 445 Mass.

4

577, 587 (2005), quoting Commonwealth v. Riberio, 49 Mass. App.
Ct. 7, 10 (2000) (telling jury that victim "was presumably
credible simply because she testified in court [went] over the
line of permissible advocacy"). Indeed, the Commonwealth
concedes that "[t]he use of the phrase '[t]hat doesn't happen'
was certainly ill-advised." We conclude that the prosecutor's
statement went beyond the bounds of zealous advocacy and
constituted improper vouching of the victim's credibility.

Second, the defendant argues, and the Commonwealth agrees,
that the prosecutor misstated or argued facts not supported by
the evidence when he said (1) there was "no testimony that [the
victim] was acting out of any anger or bad blood"; (2) the
defendant "was drunk" and "fueled by alcohol" when he drove home
from a party the night before the incident and during the
incident itself; and (3) photograph exhibits showed "blood as
[the victim] was slammed on the ground."[1] We agree the
prosecutor erred in making such assertions. See Commonwealth v.
Kozec, 399 Mass. 514, 516 (1987) (prosecutor should not
"misstate the evidence or refer to facts not in evidence" in

---

[1] We discern no error in the prosecutor's characterization
of the victim's wounds in the photographs as "fresh." See
Commonwealth v. Nelson, 468 Mass. 1, 11 (2014) ("It is not
improper for a prosecutor to make an argument presented by way
of reasonable inferences that could be drawn from the
evidence").

closing argument).  The defendant testified that the victim accused the defendant of cheating on her and told him she would "throw me in jail if I didn't come back home."  As to consuming alcohol, the defendant testified only that he was drinking at the party; no further testimony was elicited about his drinking.  And there was no testimony that the defendant "slammed" the victim's head.[2]

Third, the defendant argues that the prosecutor opined on the ultimate issue of the defendant's guilt in closing when he said, "It did happen. . . .  This fight did happen.  [The defendant] did do those injuries to [the victim].  He did beat her up.  He did assault and batter his girlfriend."  In closing argument, prosecutors may urge jurors to draw inferences from the evidence, Commonwealth v. Martinez, 476 Mass. 186, 199 (2017), but they may not express any personal opinion as to the defendant's guilt.  See Commonwealth v. Penn, 472 Mass. 610, 627 (2015), cert. denied, 578 U.S. 925 (2016); Commonwealth v. Howell, 394 Mass. 654, 661 & n.4 (1985).  The prosecutor's statement was not an assertion of an inference that could be

---

[2] According to the police report, which was not introduced at trial, the victim told the police that the defendant "threw her to the ground" and "slammed her head off the floor."  The victim did not testify to those alleged acts at trial.

6

drawn from the evidence but rather a definitive statement on the defendant's guilt. This was also improper.

Fourth, the defendant argues that the prosecutor shifted the burden of proof to the defendant by stating that "[t]he scales have been tilted" and by stating that the defendant himself "has shown that he's guilty." The former statement was made in response to the defendant's closing argument, in which counsel remarked that the scales "were tilted entirely in favor of not guilty" and the Commonwealth had not presented sufficient evidence to move the scales entirely in the other direction. This statement fell within the prosecutor's right of fair reply. See, e.g., Commonwealth v. Kee, 449 Mass. 550, 560 (2007). However, as the Commonwealth concedes, the latter statement was an "admittedly inartful comment" because a statement that shifts the burden of proof in closing argument is improper. See Commonwealth v. Amirault, 404 Mass. 221, 240 (1989). Nonetheless, the judge's repeated instruction that the Commonwealth alone bears the burden of proof was sufficient to mitigate any prejudice stemming from these particular statements.

Finally, the defendant contends that the prosecutor's closing argument was designed to arouse the passions of the jury by characterizing the defendant as "fueled by alcohol, fueled by jealously, fueled by anger"; characterizing the defendant as

7

seeking revenge after learning that the victim had cheated on him; and emphasizing the victim's wounds.  In closing arguments, prosecutors may "marshal the evidence and suggest inferences that the jury may draw from it" (citation omitted), Commonwealth v. Matos, 95 Mass. App. Ct. 343, 354 (2019), but "prosecutors may not play . . . on the jury's sympathy or emotions" (quotation and citation omitted), Commonwealth v. Martinez, 476 Mass. 186, 197 (2017).  Here, the prosecutor's characterizations of the defendant not only appealed to the jurors' sympathies but did so by misstating evidence and presenting facts not in evidence.  The prosecutor's remarks in this respect exceeded permissible bounds and may have "had an inflammatory effect on the jury beyond that which naturally would result from the evidence presented."  Commonwealth v. Bois, 476 Mass. 15, 35 (2016).

"Remarks made during closing argument are considered in the context of the entire argument, together with the evidence presented at trial and the judge's instructions to the jury." Commonwealth v. Huang, 489 Mass. 162, 180 (2022).  For the reasons that follow, "[b]ecause we are left with a serious doubt whether the result of the trial might have been different had the prosecutor's errors in closing argument not been made, we conclude that there was a substantial risk of a miscarriage of justice."  Commonwealth v. Dirgo, 474 Mass. 1012, 1017 (2016).

8

This was a case of the victim's word against the defendant's, and the prosecutor's improper remarks went to the heart of the case -- the victim's credibility. In her final charge, the judge instructed the jury that they are the sole and exclusive judges of witness credibility, and distinguished between speculating and drawing reasonable inferences from the evidence presented. However, while the judge instructed the jury that closing arguments are not evidence prior to the closing arguments, she neither repeated that instruction nor told the jurors not to rely on an argument inconsistent with the evidence after the prosecutor delivered a closing argument replete with conceded error. These instructions were "standard, not curative" (citation omitted), and where the errors were significant, we cannot say with confidence that the judge's instructions sufficiently mitigated the errors. Commonwealth v. McLeod, 30 Mass. App. Ct. 536, 540 (1991).

Furthermore, as the Commonwealth rightly acknowledges, the absence of an objection from defense counsel cannot be seen as the result of a reasonable tactical decision. See Dirgo, 474 Mass. at 1016. Nor was the evidence of guilt overwhelming, as the Commonwealth further acknowledges. See id. at 1017. Although the acquittals on two charges provide some indication that the jury were able to sort out the excessive argument, we agree with the defendant that the acquittals do not overcome the

9

other factors demonstrating a substantial risk of a miscarriage of justice.  Given the pervasiveness of the errors viewed in the context of the entire closing, the available evidence, and the judge's instructions to the jury, "we are left with uncertainty that the defendant's guilt has been fairly adjudicated" (citation omitted).  Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 44 Mass. 72 (2005).  See Fahey, 99 Mass. App. Ct. at 313-314.

2.  Specific unanimity instruction.  The defendant argues, for the first time on appeal, that he was entitled to a specific unanimity instruction.  "'A general unanimity instruction informs the jury that the verdict must be unanimous, whereas a specific unanimity instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged.'"  Commonwealth v. Conefrey, 420 Mass. 508, 512 (1995), quoting Commonwealth v. Keevan, 400 Mass. 557, 566-567 (1987).  Here, not only did the defendant not request a specific unanimity instruction, but he explicitly rejected the judge's offer "to distinguish between the assault and batteries."  There was no error.

Even assuming arguendo that there was error, there was no substantial risk of a miscarriage of justice.  First, the defendant's argument that the absence of such an instruction is structural error is foreclosed by Commonwealth v. Palermo, 482

10

Mass. 620, 629 (2019), which says that where a defendant neither requested a specific unanimity instruction nor objected to its absence, we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Gaughan, 99 Mass. App. Ct. 74, 81 (2021). Second, the defendant's opening brief does not adequately explain why any error resulted in a substantial risk of a miscarriage of justice. Notably, the defendant does not argue that the evidence was insufficient to prove that the defendant committed an assault and battery on a household or family member. See Keevan, 400 Mass. at 567 ("In considering the omission of a specific unanimity instruction, we have determined that there is no substantial risk of a miscarriage of justice if the evidence satisfies each element of the statute and is sufficient to defeat a motion for a required finding of not guilty"); Commonwealth v. Erazo, 63 Mass. App. Ct. 624, 630 (2005).

3. Double jeopardy. Finally, the defendant asserts this court should set aside the verdict because a retrial would violate his right against double jeopardy where it cannot be determined which count of assault and battery of a family or household member the jury convicted him of and which count they acquitted him of. We agree with the Commonwealth that the fact that double jeopardy may bar a retrial does not present an independent basis to reverse the conviction. Because this claim

11

is premature, we do not reach it.  See Commonwealth v. Hrycenko, 417 Mass. 309, 311, 314-317 (1994).  Should the Commonwealth seek to retry the defendant, the defendant may then move to dismiss the complaint based on double jeopardy.

Conclusion.  We conclude that the prosecutor's errors in closing argument created a substantial risk of a miscarriage of justice.  Accordingly, we vacate the judgment and set aside the verdict.

So ordered.

By the Court (Vuono, Shin & Smyth, JJ.[3]),

Clerk

Entered:  July 24, 2026.

---

[3] The panelists are listed in order of seniority.